## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **N.M., A MINOR BY AND THROUGH HER MOTHER AND NEXT FRIEND, NATALIE MELROSE,** | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No. CIV-20-125-P** |
| **ANDREW M. SAUL, Commissioner of the Social Security Administration,** | ) ) ) ) | |
| **Defendant.** | ) | |

## ORDER

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter AR___), and the parties have briefed the issues. For the following reasons, Defendant's decision is affirmed.

I. <u>Administrative History and Final Agency Decision</u>

Plaintiff protectively filed her application for SSI benefits on November 18, 2013. AR 142-43, 144-52. Plaintiff alleged she became disabled on October 21, 2013. AR 144. The Social Security Administration ("SSA") denied Plaintiff's

application on February 4, 2014, *see id.* at 62, 63-69, and on reconsideration on April 26, 2014. AR 70, 71-78.

Plaintiff appeared with counsel and testified at an administrative hearing conducted before an Administrative Law Judge ("ALJ") on June 4, 2015. AR 37-61. Plaintiff's mother also testified at the administrative hearing. *Id.* The ALJ issued a decision in which he found Plaintiff was not disabled within the meaning of the Social Security Act. AR 8-25. Following the Appeals Council's denial of Plaintiff's request for review, Plaintiff filed an appeal with this Court, which reversed Defendant's decision and remanded the matter for further administrative proceedings. *N.M. by and through Melrose v. Berryhill*, No. CIV-17-1073-BMJ, 2018 WL 3579481 (W.D. Okla. July 24, 2018).

Following remand, a second administrative hearing was held on April 15, 2019, in which Plaintiff and her mother testified. AR 437-57. On July 24, 2019, the ALJ issued a decision in which he found Plaintiff was not disabled within the meaning of the Social Security Act. AR 393-420. The ALJ followed the three-step sequential evaluation process required by agency regulations for evaluating the disability of a child. 20 C.F.R. § 416.924. The ALJ first determined Plaintiff had not engaged in substantial gainful activity since November 18, 2013, the application date. AR 399. At step two, the ALJ determined Plaintiff suffered from the severe impairments of attention deficit hyperactivity disorder ("ADHD") and generalized

anxiety disorder. *Id.*[1] At step three, the ALJ first found Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 400. The ALJ next found Plaintiff's impairments do not functionally equal the severity of the Listings. AR 404. Based on these findings, the ALJ concluded Plaintiff had not been under a disability, as defined by the Social Security Act, from November 18, 2013 through the date of the decision. AR 420.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. 20 C.F.R. § 404.981; *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009).

## II.  Issue Raised

Plaintiff raises two issues on appeal. First, Plaintiff contends the ALJ erred by failing to properly consider whether she met the requirements for Listing 112.11. Doc. No. 25 at 19-23. Second, Plaintiff asserts the ALJ erred by failing to properly analyze her limitations with respect to functional equivalence. *Id.* at 23-28.

## III.  General Legal Standards Guiding Judicial Review

Judicial review of Defendant's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *Poppa v. Astrue*, 569

---

[1] The ALJ also noted Plaintiff had received medical treatment for diagnoses of nocturnal enuresis and asthma. AR 399-400.

F.3d 1167, 1169 (10th Cir. 2009). Substantial evidence "means-and means only-'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, __ U.S. __, 139 S.Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (citations, quotations, and brackets omitted). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* (citations omitted). While a court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, a court does not reweigh the evidence or substitute its own judgment for that of Defendant. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

IV.     Listing 112.11

Plaintiff argues the ALJ erred in his analysis at step three. At step three, the ALJ must determine whether the child claimant has an impairment that meets, medically equals, or functionally equals a Listing. 20 C.F.R. § 416.924(d). If the child's impairment meets, medically equals, or functionally equals a Listing and

meets the durational requirement, the ALJ will find the child disabled at step three. *Id.* If those criteria are not met, the ALJ will find the child is not disabled. *Id.*

Plaintiff contends that in considering whether she met or medically equaled Listing 112.11, the ALJ ignored evidence that contradicted his conclusion. Doc. No. 25 at 19-23. Listing 112.11, for ADHD, requires the following:

> 112.11 Neurodevelopmental disorders (see 112.00B9), for children age 3 to attainment of age 18, satisfied by A and B:
>
> A. Medical documentation of the requirements of paragraph 1, 2, or 3:
>
> 1. One or both of the following:
>
> a. Frequent distractibility, difficulty sustaining attention, and difficulty organizing tasks; or
>
> b. Hyperactive and impulsive behavior (for example, difficulty remaining seated, talking excessively, difficulty waiting, appearing restless, or behaving as if being "driven by a motor").
>
> 2. Significant difficulties learning and using academic skills; or
>
> 3. Recurrent motor movement or vocalization.
>
> AND
>
> B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 112.00F):
>
> 1. Understand, remember, or apply information (see 112.00E1).
>
> 2. Interact with others (see 112.00E2).
>
> 3. Concentrate, persist, or maintain pace (see 112.00E3).
>
> 4. Adapt or manage oneself (see 112.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11.

Plaintiff contends the "ALJ reviewed some medical and school records but ignored numerous records which explained or contradicted portions of the record upon which he relied." Doc. No. 25 at 20. Beginning with the paragraph A consideration, the ALJ stated:

> With regard to the paragraph A criteria for Listing 112.11, the claimant demonstrates no more than moderate distractibility, difficulty sustaining attention, difficulty organizing tasks, hyperactivity, or impulsivity. More specifically, serial examinations of the claimant find her to be cooperative, alert, following commands, coherent, goal directed, logical, focused, memory intact, and average intellectual functioning. (Ex. 12F). In addition, there is no indication that the claimant has significant difficulties learning, as illustrated by her teacher questionnaires, education reports, and very mild, and recent, IEP. (Ex. 16E, 17E, 24E, and 2F). There is also no documented recurrent motor movement or vocalization. Accordingly, the undersigned finds that the claimant has not satisfied the requirements of Listing 112.11, paragraph A.

AR 401-02. In support of his finding that Plaintiff did not meet paragraph A(1)(a) or (b), the ALJ cites to one set of medical records. *Id.* Those records are from Commander Counseling & Wellness Center and consist of four visits occurring between April 24, 2018 and February 23, 2019. AR 688-703.

In the psychological evaluation conducted by Dr. Cody Commander at Commander Counseling on June 29, 2018, and to which the ALJ did not refer, the evaluation indicates Plaintiff "fidgets, interrupts others, [is] easily distracted, loses things, [has] trouble staying seated, [and] trouble following directions." AR 615.

With regard to "executive/attention functioning," Plaintiff was below average in the following categories: overall sustained simple auditory attention, sustained auditory attention, and being able to stop an initial behavior and do another behavior. AR 616-17. The evaluation also found Plaintiff had "significant problems" in the areas of "[h]yperactivity, [i]mpulsivity," "difficulties with paying attention," "difficulties over activity or impulse control," and "manic symptoms related to bipolar disorder." AR 617-18. Dr. Commander concluded:

> [Plaintiff] is reportedly experiencing significant levels of inattention and difficulties concentrating, which was consistent with objective measures and behavioral observations. It is likely that these symptoms significantly interfere with her academic and social functioning, and is most consistent with an Attention-Deficit/Hyperactivity Disorder, Combined Type diagnosis. She also evidenced significant disruptions in mood, meeting clinical criteria for Generalized Anxiety Disorder. Although she evidenced subclinical levels of depression, she did not meet full criteria for a depressive disorder. She did not meet clinical criteria for any other cognitive, behavioral, or mood disorders. It is likely that with appropriate academic and psychological interventions, her overall level of functioning can improve.

AR 614.

Throughout Plaintiff's medical treatment, her mother consistently reported Plaintiff is hyperactive, cannot sit still, is easily distracted, in constant motion, and/or interrupts people frequently. AR 233, 242, 246-48, 311, 317, 339, 361, 365, 370. These behaviors were also noted by medical personnel upon examination, including but not limited to that Plaintiff would frequently violate other people's space, was in

constant motion, and frequently interrupted. AR 234, 243, 248, 252, 312, 317, 321, 341, 346, 362, 366, 371.

Within the records from Commander Counseling, Plaintiff was seen by Counselor Brenda James, APRN-CNP. Counselor James consistently diagnosed Plaintiff with acute generalized anxiety disorder, acute insomnia, chronic oppositional defiant disorder, chronic ADHD, and chronic nocturnal enuresis. AR 688, 690, 696, 700. During Plaintiff's sessions with Counselor James, there are notations that Plaintiff was cooperative, alert, following commands, coherent, goal directed, logical, focused, displayed intact memory, and displayed average intellectual functioning, as the ALJ stated. AR 401. However, Counselor James also frequently noted Plaintiff's mother's subjective reports regarding behaviors/problems at home and school. AR 688-90, 692-93, 697. On April 15, 2019, Counselor James wrote a letter regarding Plaintiff, explaining Plaintiff had been under her care for three years and during that time, "has undergone various testing with results that indicate significant findings for inattention, hyperactivity and impulsivity . . . ." AR 762.

There is also evidence in the record relevant to Listing 112.11(A) from Plaintiff's second grade teacher, Sue Labat. Ms. Labat completed the most recent teacher questionnaire for Plaintiff in the record. AR 218-25. She indicated Plaintiff had "a serious problem" daily with paying attention when spoken to directly,

refocusing to task when necessary, and working without distracting herself or others.

AR 220. She described Plaintiff as "bright but she is incredibly distracted. She will

require extra time to complete an assignment because of distractions & lack of

focus." AR 220. Ms. Labat further explained

> [Plaintiff] can be very disruptive in class & will be given time-out,
> removal from classroom & calls to mother. . . . [Plaintiff] is aware of
> classroom procedures. In most cases while medicated w/ADHD meds,
> [Plaintiff] is cooperative. Without her meds[,] she is impulsive,
> intrusive, uncooperative & does not follow classroom procedures at all!

AR 221. She also described that Plaintiff

> appears to be paying attention only to discover that she has not grasped
> anything being said or demonstrated. She is quite bright educationally
> but neglects the ambition & focus to present her best work. When
> [Plaintiff] is given an open-ended amount of time to complete an
> assignment[,] she will eventually finish her work.

AR 224-25. Finally, Ms. Labat stated,

> . . Without meds, [Plaintiff] is incredibly distracting, impulsive,
> spontaneous & a challenge to contain. In order to teach when [Plaintiff]
> is off meds she is best sent out of the room. . . . Emotionally, [Plaintiff]
> is either an uncontrollable, active[,] & talking intrusion or she recedes
> into herself & is non-communicative.

AR 225.

   The ALJ did not discuss any of this evidence before reaching his conclusion

that Plaintiff did not meet the requirements of Listing 112.11(A)(1). Instead, the ALJ

cited solely to Plaintiff's four visits with Commander Counseling between April 24,

2018 and February 23, 2019 and limited his discussion to the counselor's

observations of Plaintiff during those visits. AR 401. The ALJ did not discuss the counselor's overall conclusions regarding Plaintiff, nor the remainder of the evidence in the record. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[T]he regulations require the ALJ to 'consider all evidence in [the] case record when [he] makes a determination or decision whether [claimant is] disabled,' 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3), and this court requires the ALJ to discuss 'the significantly probative evidence he rejects[.]'" (quoting *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996)). The ALJ's consideration of the record with regard to Listing 112.11(A) is woefully inadequate.

On the other hand, the ALJ addressed the evidence in the record that contradicted his conclusion that Plaintiff did not meet the requirements for Listing 112.11(B). In order to meet Listing 112.11, Plaintiff must meet the requirements for both paragraphs A and B. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11. As explained below, the ALJ's decision that Plaintiff did not meet the requirements of Listing 112.11(B) is supported by substantial evidence.

Listing 112.11(B) requires Plaintiff to prove extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and/or adapting or managing oneself.

In finding Plaintiff had no limitation in her ability to understand, remember, or apply information, the ALJ "concur[red] with and adopt[ed] the findings and conclusions of Gary L. Lindsay, Ph.D. . . . ." AR 402. The ALJ explained this conclusion was further supported by the fact that Plaintiff receives good grades at school, has only had one IEP, and that her kindergarten and second grade teachers noted in their questionnaires that Plaintiff has no problems acquiring and using information. *Id.* As previously noted, Ms. Labat described instances in which Plaintiff would appear to be paying attention but did not grasp anything that was said or done and that she must be given an open-ended amount of time in order to complete her schoolwork. AR 224-25. These descriptions could support a finding that Plaintiff has some limitation in her ability to understand and certainly apply information. However, as the ALJ noted, when asked to rate Plaintiff's ability to understand and apply information in various contexts, Ms. Labat indicated that Plaintiff did not have any limitations. AR 219.[2]

_____

[2] In stating that Ms. Labat indicated Plaintiff did not have any limitations with regard to her ability to understand, remember, and apply information, the ALJ cited to a page in Ms. Labat's questionnaire in which she was asked to rate Plaintiff's ability in various contexts/subcategories related to this area. AR 402 (citing AR 219). There is a choice at the top left of the page that allowed Ms. Labat to summarily mark that Plaintiff does not have any limitations related to this area. *Id.* The ALJ indicated this is what Ms. Labat chose. AR 402. On the Court's copy of the administrative record, this particular page of the questionnaire is missing the far left side of the page and instead, simply appears blank. AR 219. Unlike another page of Ms. Labat's questionnaire, discussed below, Plaintiff does not indicate in her Opening Brief that the ALJ's statement is incorrect. Doc. No. 25 at 21-22. Thus, the Court presumes the ALJ's statement is accurate.

Additionally, the ALJ found Plaintiff had a moderate limitation in her ability to interact with others. AR 402-03. In reaching this conclusion, the ALJ's decision indicates that he weighed and considered the relevant evidence of record. The ALJ discussed the questionnaire completed by Plaintiff's kindergarten teacher that indicated Plaintiff had an obvious problem "making and keeping friends" and she explained, "[Plaintiff] often says she does not have any friends because of minor disagreements she feels can't be resolved." AR 288. The ALJ further explained his rationale that Plaintiff had a moderate limitation in her ability to interact with others:

> This conclusion is also consistent with the September 21, 2015 examination, in which the claimant was remarked to "sometimes" refuse[] to share, fights with other children, does not listen to rules, and teases others; but, she never does not understand other people's feelings, or takes things that do not belong to her. Furthermore, during this examination, the claimant was remarked to be "average" in her relationships with her parents, siblings, peers, and participation in organized activities. This conclusion is also supported by the claimant's first grade report card, reflecting satisfactory in all social growth areas, and that no conference was requested. In addition, she was specifically remarked to "relate[s] well to peers." This conclusion is also generally consistent with the December 27, 2015 teacher questionnaire indicating that, while taking her medication, the claimant is cooperative, but that when she is not on her medication, she is impulsive, intrusive, uncooperative, and does not follow classroom procedures. This also serves to confirm that the claimant's medications effectively control her symptoms. Finally, this conclusion is consistent with Dr. Commander's June 29, 2018 evaluation of the claimant, reflecting that she was prone to home anger outbursts; that she had minimal friends; and, that she talks back at school. Overall, the longitudinal record supports no greater than a moderate limitation in the claimant's ability to interact with others.

AR 402-03 (citations omitted).

Plaintiff argues the ALJ erred by ignoring or 'glossing over' certain portions of the record. Doc. No. 25 at 22. First, Plaintiff complains the ALJ "relied primarily on the opinions of two state agency physicians who completed their reports on February 4, 2014 and April 24, 2014, meaning they did not have the benefit of any record from May 2014 forward." *Id.* While this is accurate, the ALJ specifically discussed evidence from the record dated after May 2014 that he concluded supported the agency physicians' opinions. AR 402-03. Second, Plaintiff argues that the ALJ did not consider Plaintiff's school disciplinary record indicating that she punched another child because she thought he was chewing his apple too loudly. Doc. No. 25 at 22. While the ALJ did not specifically reference this record, he did specifically consider that Plaintiff sometimes fights with other children. AR 403.

In reviewing the ALJ's decision, he addressed the portions of the record related to Plaintiff's ability to interact with others that she contends he glossed over or ignored. In essence, Plaintiff's arguments turn on her contention that the evidence could support a different conclusion. That, however, is not the relevant standard of review on appeal. That this Court might well have reached a different result is not a basis for reversal absent a showing that substantial evidence does not support the ALJ's decision. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

Similarly, Plaintiff challenges the ALJ's finding that she suffers a moderate limitation in her ability to concentrate, persist, or maintain pace. The ALJ concurred

with and adopted the rationale and conclusion of the state agency reviewing physicians in this regard. AR 403. The ALJ explained:

> [T]his conclusion is consistent with the claimant's kindergarten teacher's teacher questionnaire, reflecting that the claimant has some obvious problems, but no serious problems in attending and completing tasks. This conclusion is also consistent with the September 21, 2015 examination of [] claimant, reflecting that she was often fidgety, easily distracted, and that she has trouble paying attention. This conclusion is further supported by the claimant's first grade report card, reflecting all satisfactory ratings in her work and study habits. This conclusion is also generally consistent with the claimant's second grade teacher's teacher questionnaire, indicating that the claimant was distracted, demonstrated a lack of focus, and needed extra time for assignment completion. Finally, this conclusion is consistent with the June 29, 2018 evaluation by Dr. Commander, noting that the claimant's memory and concentration were good. Overall, the record supports no greater than a moderate limitation in the claimant's ability to concentrate, persist, or maintain pace.

*Id.* (citations omitted).

Plaintiff complains the ALJ ignored the fact that Plaintiff's teacher provides an open-ended amount of time to complete her assignments. Doc. No. 25 at 22-23. However, the ALJ specifically noted that Plaintiff's second grade teacher indicated she is given extra time to complete her assignments. AR 403. Plaintiff is correct in arguing the ALJ ignored the testimony of Plaintiff's mother regarding the fact that it takes Plaintiff over two hours to do thirty minutes of work and that she has to constantly redirect her. Doc. No. 25 at 23 (citing AR 52); *see also* AR 450-51. Nevertheless, this testimony is similar to Ms. Labat's questionnaire, to which the ALJ specifically referred. AR 403 (citing AR 220).

Finally, Plaintiff challenges the ALJ's finding that she had a moderate limitation in her ability to adapt or manage herself. In reaching his conclusion, the ALJ concurred with the state agency reviewing physicians and explained that the conclusion

> is also consistent with the claimant's kindergarten teacher's teacher questionnaire, indicating that the claimant had only one obvious problem caring for herself. Furthermore, this conclusion is consistent with the claimant's second grade teacher's teacher questionnaire, indicating that she had no problems caring for herself. Overall, the record supports no greater than a moderate limitation in the claimant's ability to adapt or manage herself.

AR 403 (citations omitted).[3]

The ALJ cited to a portion of Ms. Labat's questionnaire indicating that Plaintiff does not have any limitations with regard to caring for herself. AR 403 (citing AR 223). However, Ms. Labat did not indicate that Plaintiff did not have any limitations by coloring the circle for "NO problems observed in this domain." AR 223. Instead, this page of Ms. Labat's questionnaire is simply blank. *Id.*[4]

---

[3] Plaintiff's kindergarten teacher indicated that she had an obvious problem identifying and appropriately asserting emotional needs. AR 290.

[4] The Court contemplated the possibility that Ms. Labat chose the circle next to the "No problems observed in this domain" category and that portion of the page is simply not visible in the Court's copy of the record. AR 223. However, Plaintiff states in her Opening Brief that Ms. Labat left this page blank. Doc. No. 25 at 26. In his Response, Defendant does not address the discrepancy, instead merely stating that the ALJ noted his conclusion was supported by Ms. Labat's questionnaire wherein she states that Plaintiff had no problems caring for herself. Doc. No. 27 at 13.

Additionally, in another portion of her questionnaire, Ms. Labat stated that Plaintiff, who was in second grade at the time the questionnaire was completed, suffers from incontinence. AR 224. Additionally, Plaintiff's mother testified that Plaintiff requires more care than her younger children as she cannot bathe herself appropriately, lay out her own clothes, sucks her thumb, eats paper at school, and is often sent to the back the classroom where she draws all over herself so that the teacher can teach the rest of the class. AR 445-49.[5]

With regard to the majority of Ms. Labat's questionnaire, the ALJ noted, "The medical and educational records as a whole fully support the determination that the claimant has no more than less than marked limitations in any domain. The only exception to this is the teacher questionnaire prepared by the claimant's second grade teacher; however, this is attributed to the claimant not taking her medications as directed." AR 403-04. While the Court is not convinced the record supports a finding that Plaintiff has failed to take her medications "as directed,"[6] Ms. Labat does draw a distinction in her questionnaire between Plaintiff's difficulties when she has or has not taken medication. AR 221, 224, 225.

---

[5] Ms. Labat indicated in her teacher questionnaire, "[Plaintiff] is very disruptive in class & will be given time out, removal from classroom & calls to mother." AR 221.

[6] Both the medical record and Plaintiff's mother's testimony indicate various side effects from Plaintiff's medications, including sedative effects, severe insomnia, and severe weight gain, that has made maintaining her medication regimen difficult.

Without question, the record contains evidence that could support a finding that Plaintiff meets the requirements for Listing 112.11. Indeed, reviewing the same evidence, the Court may well have reached differing conclusions with regard to portions of the subcategories within the Listing. Certainly this case is not clear-cut and Plaintiff adduced evidence consistent with the requirements of Listing 112.11. However, the ALJ complied with the regulations in weighing the evidence and his conclusion that Plaintiff does not meet Listing 112.11 is supported by substantial evidence in the record. "[I]t is not the province of th[e] court to reweigh the evidence." *Taylor v. Astrue*, 266 F. App'x 771, 777 (10th Cir. 2008). *See also, cf., Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014) ("In citing what he contends is contrary evidence [to the ALJ's conclusion regarding the severity of the claimant's impairments], Mr. Alarid is asking us to reweigh the evidence, which we cannot do.").

As noted above, that a district court might have reached a different result is not a basis for reversal absent a showing that substantial evidence does not support the ALJ's decision. *Ellison*, 929 F.2d at 536; *Oldham v. Astrue*, 509 F.3d 1254, 1257–58 (10th Cir. 2007) ("Although the evidence may also have supported contrary findings, we may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the

matter been before it de novo." (quotations and alteration omitted)). Here, substantial evidence supports the ALJ's decision. Accordingly, this claim of error is denied.

V. <u>Functional Equivalence</u>

At step three of the sequential evaluation process, the ALJ also evaluated six domains to determine whether Plaintiff's impairments functionally equaled a listed impairment. AR 404-20. A child's impairment functionally equals a listed impairment if it is "of listing-level severity . . . *i.e.*, it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain . . . ." 20 C.F.R. § 416.926a(a), (d). The six domains are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

A "marked" limitation will be found if an impairment "seriously" interferes with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). A marked limitation may also be found if the child has a valid score that is more than two, but less than three, standard deviations below the mean on a comprehensive standardized test designed to measure a particular domain, although the SSA will not rely solely on test results. 20 C.F.R. §§ 416.924a(a)(1)(ii), 416.926a(e)(2). If the interference is "very serious[ ]," the limitation is considered "extreme."  20 C.F.R. § 416.926a(e)(3).

In assessing whether a child has "marked" or "extreme" limitations, the ALJ considers the functional limitations from all medically determinable impairments, including any impairments that are not severe. 20 C.F.R. § 416.926a(a). The ALJ must consider the interactive and cumulative effects of the child's impairment or multiple impairments in any affected domain. 20 C.F.R. § 416.926a(c). The ALJ is required to compare how appropriately, effectively, and independently the child performs activities compared to the performance of children of the same age who do not have impairments. 20 C.F.R. § 416.924a(b).

In the present case, the ALJ found Plaintiff had a "less than marked" limitation in the domains of: (1) attending and completing tasks, (2) interacting and relating with others, and (3) the ability to care for herself. AR 414-17, 418-19. The ALJ also determined Plaintiff had no limitation in the domains involving: (1) acquiring and using information, (2) moving and manipulating objects, and (3) health and physical well-being. AR 413-14, 417-18, 419-20. Accordingly, the ALJ concluded that since Plaintiff did not have an impairment or combination of impairments resulting in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning, she was not disabled. AR 420. Plaintiff challenges the ALJ's findings in four domains: attending and completing tasks, interacting and relating with others, caring for herself, and health and well-being. Doc. No. 25 at 23-28.

A. <u>Attending and Completing Tasks</u>

The domain of attending and completing tasks encompasses a child's ability to "initiate and maintain attention, including the child's alertness and ability to focus on an activity or task despite distraction, and to perform tasks at an appropriate pace." Social Security Ruling 09-4p, 2009 WL 396033, at *2. In assessing limitations in this domain, adjudicators will consider the child's ability to change focus after completing a task, avoid impulsive thinking and acting, organize things, and manage time. *Id.* One assessment of limitations in this domain is whether school age children focus long enough to do classwork and homework. *Id.* As noted by the SSA, children with ADHD may be particularly susceptible to limitations in this domain. The SSA states:

> Children with attention-deficit hyperactivity disorder (AD/HD) whose primary difficulty is inattention may be easily distracted or have difficulty focusing on what is important and staying on task. They may fail to pay close attention to details and make careless mistakes in schoolwork, avoid projects that require sustained attention, or lose things needed for school or other activities beyond what is expected of children their age who do not have impairments. Children with AD/HD whose primary difficulty is hyperactivity and impulsivity may fidget with objects instead of paying attention, talk instead of listening to instructions, or get up from their desks and wander around the classroom beyond what is expected of children their age who do not have impairments.

*Id.* at *3. Some examples of limitations in this domain include:

• Is slow to focus on or fails to complete activities that interest the child,

• Gives up easily on tasks that are within the child's capabilities,

• Repeatedly becomes sidetracked from activities or frequently interrupts others,

• Needs extra supervision to stay on task, and

• Cannot plan, manage time, or organize self in order to complete assignments or chores.

*Id.* at *5-6.

Here, the ALJ again concurred with the opinions of the state agency reviewing physicians in finding Plaintiff had less than a marked limitation. AR 415. The ALJ further explained:

> [T]his is consistent with the claimant's kindergarten teacher's teacher questionnaire, reflecting that the claimant has some obvious problems, but no serious problems in attending and completing tasks. This is also consistent with the September 21, 2015 examination of [] claimant, reflecting that she was often fidgety, easily distracted, and that she has trouble paying attention. This is further supported by the claimant's first grade report card, reflecting all satisfactory ratings in her work and study habits. This also generally consistent with the claimant's second grade teacher's teacher questionnaire, indicating that the clamant was distracted, demonstrated a lack of focus, and needed extra time for assignment completion. Finally, this is consistent with the June 29, 2018 evaluation by Dr. Commander, noting that the claimant's memory and concentration were good. Overall, the record supports no greater than a less than marked limitation in the claimant's ability to attend to and complete tasks.

AR 415-16 (citations omitted).

Plaintiff argues the ALJ erred in reaching this conclusion based on the testimony of Plaintiff's mother that Plaintiff takes two and a half hours to do what should be thirty minutes of homework because she is constantly distracted. AR 55-

56. She also explained that while Plaintiff's medications are helpful during the school day, said medications have worn off by the end of the day. *Id.* Additionally, Plaintiff points out that Ms. Labat indicated Plaintiff has a "serious problem" paying attention when spoken to directly, refocusing to task when necessary, and working without distracting self or others. AR 220. Ms. Labat also indicated Plaintiff had a "very serious problem" working at a reasonable pace/finishing on time. *Id.*

While the evidence upon which Plaintiff relies could certainly support a finding that Plaintiff has a marked limitation in this domain, the ALJ discussed not only Ms. Labat's questionnaire but also other relevant evidence within the record. AR 415-16. In considering the record as a whole, as the ALJ is required to do, he concluded that while Plaintiff has some limitation in this domain, it is less than a marked limitation. *Id.* The Court cannot reweigh the evidence. *See, supra.* There is substantial evidence in the record to support the ALJ's conclusion. Accordingly, Plaintiff's claim of error is rejected.

B. Interacting and Relating With Others

The domain of interacting and relating with others encompasses a child's ability to "initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others." Social Security Ruling 09-5p, 2009 WL 396026, at *2. Some examples of limitations in this area for school age children ages 6-12 include:

• Having no close friends or having friends that are older or younger,

• Avoiding or withdrawing from people he or she knows,

• Being overly anxious or fearful of meeting new people, and

• Has difficulty cooperating and communicating with others.

*Id.* at *6-7.

The ALJ found Plaintiff had a less than marked limitation in interacting and relating with others. AR 417. After noting his concurrence with the state agency reviewing physicians, he explained:

> [T]his [finding] is consistent with the claimant's kindergarten teacher's teacher questionnaire, reflecting that the claimant ha[s] one obvious problem in interacting with and relating to others. This is also consistent with the September 21, 2015 examination, in which the clamant was remarked to "sometimes" refuse[] to share, fights with other children, does not listen to rules, and teases others; but, she never does not understand other people's feelings, or takes things that do not belong to her. Furthermore, during this examination, the claimant was remarked to be "average" in her relationships with her parents, siblings, peers, and participation in organized activities. This is also supported by the claimant's first grade report card, reflecting satisfactory in all social growth areas, and that no conference was requested. In addition, she was specifically remarked to "relate[] well to peers." This conclusion is also generally consistent with the December 27, 2015 teacher questionnaire, indicating that, while taking her medication, the claimant is cooperative, but that when she is not on her medication she is impulsive, intrusive, uncooperative, and does not follow classroom procedures. This also serves to confirm that the claimant's medications effectively control her symptoms. Finally, this is consistent with Dr. Commander's June 29, 2018 evaluation of the claimant, reflecting that she was prone to home anger outbursts; that she had minimal friends; and, that she talks back at school. Overall, the longitudinal record supports no greater than a less than marked limitation in the claimant's ability to interact with and relate to others.

*Id.* (citations omitted).

In challenging the ALJ's conclusion, Plaintiff relies on the testimony of Plaintiff's mother, in which she indicated that Plaintiff does not have any friends. AR 47, 53. She explained that when children do play with her, they stop after 30 to 45 minutes due to Plaintiff's issues. AR 48. Plaintiff also relies on her school record indicating that she has been disciplined for assault and battery when she punched another child twice because he was chewing his apple too loudly, as well as fights with other children. AR 733-34. However, the ALJ did discuss the testimony of Plaintiff's mother in his decision. AR 411. Moreover, although he was referencing an earlier record, the ALJ specifically considered that Plaintiff sometimes fights with other children and he noted the 2018 evaluation indicating that she has minimal friends. AR 417.

Additionally, Plaintiff complains generally that the ALJ did not adequately discuss her school records indicating problems interacting with others. However, earlier in the decision, the ALJ thoroughly discussed Plaintiff's educational records including her teacher's questionnaires and similar evaluations. AR 406, 407-08, 408.

Plaintiff also relies on other portions of the record the ALJ allegedly did not address. In 2018, a Psychoeducational Evaluation was performed on Plaintiff at school. AR 745. The evaluation indicates Plaintiff "was referred for a comprehensive psycho-educational evaluation to assist the multi-disciplinary team

in identifying strengths and needs and planning an appropriate educational program for [her] . . . [due to] behavioral issues in the classroom . . . [and] suspected disabilities." *Id.* Plaintiff was found to be "very elevated" in the areas of emotional distress, upsetting thoughts, separation fears, social anxiety, defiant/aggressive behaviors, perfectionistic and compulsive behaviors, violence potential behaviors, and physical symptoms. AR 746-47. With regard to "violence potential behaviors," the category description provides, "May display, or may be at risk for, aggressive behavior." AR 747. Overall, her cognitive ability was assessed at below average, while her academic skills were in the average range. *Id.* While the ALJ does not appear to have addressed this particular evaluation in his decision, the results are similar to other evaluations and observations the ALJ did specifically consider. AR 410, 412-13.

Plaintiff also relies on multiple physician visit notes wherein it is noted that Plaintiff frequently invaded the examiner's personal space, interrupted the speaker, displayed inappropriate bids for attention, played with medical equipment, and on at least one occasion, lowered the examiner's seat height. AR 234, 252, 312, 336, 341, 346, 366, 370. However, the ALJ did consider these records earlier in the decision. AR 405, 406-07, 408. *See, cf., Best-Willie v. Colvin*, 514 F. A'ppx 728, 733 (10th Cir. 2013) (explaining that a lack of "contemporaneous discussion" of the evidence by the ALJ does not mean that a court cannot review the decision when the ALJ has

"thoroughly discussed the medical evidence in the record."). Although a contemporaneous discussion can be helpful, when the ALJ has previously discussed the medical evidence and testimony, the lack of a contemporaneous discussion does not mean this Court is unable to review the ALJ's decision. *Best-Willie*, 514 F. App'x at 733.

C. Caring for Herself

The domain of caring for yourself requires evaluation of how well a child maintains a healthy emotional and physical state, including how well she satisfies her physical and emotional wants and needs in appropriate ways. 20 C.F.R. § 416.926a(k). In support of his finding that Plaintiff had no limitation in carrying for himself, the ALJ relied again on the state agency reviewing physicians. AR 419. He further found consistency in the record noting that Plaintiff's kindergarten teacher indicated that she only had one obvious problem caring for herself. *Id.* (citing AR 290, wherein Plaintiff's kindergarten teacher indicated Plaintiff has an obvious problem identifying and appropriately asserting her emotional needs). The ALJ also relied on Plaintiff's second grade teacher's questionnaire wherein she indicated Plaintiff had no problems caring for herself. *Id.* (citing AR 223). Based on this evidence, the ALJ concluded, "Overall, the record supports no greater than a less than marked limitation in the claimant's ability to care for herself." *Id.*

In challenging the ALJ's finding in this domain, Plaintiff again notes her mother's testimony indicating Plaintiff does not attend to her own self-care. Instead, her mother has to help Plaintiff get dressed, brush her teeth, brush her hair, and bathe appropriately. AR 446, 448, 450, 451-52. Plaintiff also again notes that the ALJ's assertion that Ms. Labat's questionnaire indicates Plaintiff has no problems with self-care is inaccurate as that page of her questionnaire is blank. Doc. No. 25 at 26 (citing AR 223). She also points out that the record supports a finding that Plaintiff's condition has been regressing in recent years. In so asserting, Plaintiff relies on a 2017 record from Counselor James, in which she stated, "[O]ngoing and continual[] escalation in her overall behavior with increasing opposition and/or regression (ie: having difficulty bathing/dressing hersel[f] as well as sucking her thumb (more often now)." AR 642. Plaintiff contends the ALJ's failure to discuss these records that contradict his conclusion of a less than marked limitation is error.

In his decision, the ALJ considered multiple opinions from Ms. James, including opinions dated later than 2017, in which she described Plaintiff's condition as moderate with improvement. AR 412, 413. Specifically, he concluded:

> [T]he undersigned has considered the April 2019 opinion of Ms. James stating that the claimant "meets the criteria in regulation 112.11." However, such opinion is inconsistent with Ms. James' prior treatment notes and opinions since September 2015 as noted above, as well as with the opinions of Dr. Commander, the State agency physicians, and the claimant's teachers, all as noted above. Again, it is noted that in August and November 2016 and March and May 2017, Ms. James opined that the severity of the claimant's illness was "moderate and

well controlled." In January 2018, Ms. James opined that [] the severity of the claimant's illness was "moderate with improvement." Ms. James has offered no treatment notes from January 2018 through April 2019.

*Id.* at 413 (citations omitted).

As with the consideration of each domain herein, there is conflicting evidence regarding the severity of Plaintiff's limitations. However, the ALJ discussed the relevant evidence within the record. AR 415-16. *See, cf., Boss v. Barnhart*, 67 F. App'x 539, 542-43 (10th Cir. 2003) ("While this case presents conflicting medical evidence, the record reveals that the ALJ acted within his province to determine the appropriate weight to be attributed to the evidence in order to resolve the conflict."). In considering the record as a whole, as the ALJ is required to do, he concluded that while Plaintiff has some limitation in this domain, it is less than a marked limitation. *Id.* This conclusion is supported by substantial evidence in the record.

D. <u>Health and Physical Well-Being</u>

"The domain of physical health and well-being takes into account the cumulative effect of a claimant's physical and mental impairments, including any limitations caused by treatment or therapy for these conditions." *Alicia W. on behalf of J.L.S v. Saul*, No. 18-CV-0399-CVE-FHM, 2020 WL 863515, at *5 (N.D. Okla. Feb. 21, 2020) (citing 20 C.F.R. § 416.926a(l)). In finding that Plaintiff had a less than marked limitation, the ALJ stated that he concurred with the state agency reviewing physicians and explained their opinions were consistent with

the claimant's kindergarten teacher's teacher questionnaire, reflecting that the claimant does not have frequent absences, and that the claimant calms down after taking her medicine. In addition, this is consistent with the claimant's first grade report card, reflecting that the claimant only missed 14.5 days of class out of the 171 days of school; amount[ing] to only 8.48 percent, not excessive. Finally, this is consistent with the claimant's second grade teacher's teacher questionnaire reflecting that the claimant experiences a "drastic improvement while on meds." Overall, the record supports no limitation in the claimant's health and physical well-being.

AR 420 (citations omitted).

Plaintiff contends the ALJ ignored evidence in the record contradicting his conclusion. She states the ALJ failed to discuss the side effects of Plaintiff's medications, some of which occurred after the State agency reviewing physicians rendered their opinions. Doc. No. 25 at 27. However, the ALJ did discuss, previously in his decision, the testimony from Plaintiff's mother indicating that the side effects from Plaintiff's medications included "trouble sleeping, irritability, and weight." AR 411. The ALJ also included a relatively detailed discussion of Plaintiff's medical records that included discussion of Plaintiff's medication history, effectiveness, and side effects. AR 405-08. The ALJ's finding is supported by substantial evidence. Plaintiff's urging to essentially reweigh the evidence is denied.

## VI.    Conclusion

Based on the foregoing analysis, the decision of the Commissioner is affirmed. Judgment will issue accordingly.

ENTERED this  8th  day of  June , 2021.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE